PETER BRUNER, RESPONDENT, *v.* HENRY MEIGS, JR., AND OTHERS, APPELLANTS.

*Trust — Power to sell real estate — when terminated.*

A testator devised his estate to trustees, with directions to divide it into seven equal parts, and to pay over the income of one part to each child, and, upon the death of any child, leaving issue, to convey, etc., the said one-seventh part to his issue, and further authorized his trustees, at all times during the continuance of such trusts, to grant, sell, etc., all or any part of the real or personal property so held in trust. The will further provided, that certain charges entered on the books of the testator should be deducted from the shares of his children respectively. No division was ever made of said estate by the trustees. In November, 1872, one child died, leaving a widow and issue. *Held,* that the power of the trustees to convey the share of the estate held by them for such deceased child, terminated on the death of such child. (BRADY, J., dissenting.)

APPEAL from a judgment recovered on a trial at Special Term, in an action to recover a sum of money, paid down by the plaintiff at a sale of certain real estate, purporting to be made under authority contained in the will of John J. Palmer, deceased, and to have such sale cancelled. The will devised the rest and residue of the testator's

real and personal estate to trustees, " in trust, to take, receive and hold all the said rest, residue and remainder of my estate, effects, property and rights of property, during the life of my said wife, Margaret Palmer, to lease or let the real estate so to them devised, and to invest the personal estate and property and the proceeds thereof upon bond and mortgage, on improved and productive real estate in fee simple situated in the said city of New York, or in public stocks of the United States or of the State of New York or of the city of New York, and keep the same so invested ; and to collect, get in and receive the rents, interest, income, dividends and profits thereof, and pay and apply such rents, interest, income, dividends and profits from time to time as realized and received, after paying with and out of the same and deducting therefrom all taxes, assessments, expenses of insurance and repairs, and other necessary and proper charges, upon my said residuary estate, to the use of my said wife, Margaret Palmer, during her natural life, and her receipts shall be sufficient evidences of such payment and application, and good and sufficient acquittances and discharges therefor. And upon this further trust, and I do hereby devise, order and direct, that immediately after the death of my said wife, all the said rest, residue and remainder of my estate, effects, property and rights of property, and the proceeds thereof, including all the rents, interest, income, dividends and profits thereof, or arising therefrom, not previously paid and applied in pursuance of the provisions hereinbefore contained, be, by the said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, divided into seven equal parts or shares, and that in their ascertaining the amount of my said residuary estate for the purpose of such division into seven parts, they include in such estate, and compute as part thereof, all and every the sum and sums of money by me at any time advanced, or paid to, or for, or on account of my seven children hereinafter named, each, any, or either of them, and charged to or against them, my said children, respectively, in my own handwriting, in a book of accounts kept' by me at my dwelling-house, and marked on the inside of the cover thereof in my handwriting, "John J. Palmer, Number three;" but no interest shall be computed or charged upon any or either of said sums of money so paid or advanced. And that the said

Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, thereupon take, receive, have, hold, use and dispose of the said seven equal parts or shares of my said residuary estate, and each of such parts or shares severally and separately, and the income thereof, and I give, devise and bequeath the same, and each of them severally and separately, and the income thereof, to, for and upon the trusts, uses and purposes following, that is to say : "   *   *   *   *   *

"Sixth. That they, the said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, upon and immediately after the death of my said wife, take, receive and hold one other equal one-seventh part or share of my said residuary estate, to be ascertained in the manner above provided, less the amount of the several sums of money by me advanced, or paid to, for or on account of my son Henry Palmer, and charged to or against him in the said book of accounts above mentioned during the natural life of my said son Henry. That they lease or let the real estate belonging thereto, and invest the personal estate and property upon bond and mortgage on improved and productive real estate, in fee simple, situated in the city of New York, or in public stocks of the United States, or of the State of New York, or of the city of New York, and keep the same so invested. That they collect, get in and receive the rents, interest, income, dividends and profits thereof, and pay and apply such rents, interest, income dividends and profits, from time to time, as realized and received (after paying with and out of the same all taxes, assessments, expenses of insurance and repairs and other necessary and proper charges upon the said last mentioned one-seventh part), to the use of my said son Henry, during his natural life, and his receipts shall be sufficient evidence of such payment and application, and good and sufficient acquittances and discharges therefor; and that they upon and immediately after the decease of my said son Henry (after the death of my said wife) leaving lawful issue him surviving, or, in case of his decease before the death of my said wife, leaving lawful issue surviving at the time of her decease, then upon and immediately after the death of my said wife, convey, assign, transfer, make over, pay and deliver all the said last mentioned one-seventh part of my residuary estate (less the deduction last

aforesaid), and the proceeds thereof then remaining, and all property and rights of property in which the same, or any part thereof, shall then be invested, and all interests, income, dividends and profits thereof, or arising therefrom, not previously paid and applied in pursuance of the provisions hereinbefore contained, to the then surviving child or children of my said son Henry, and the then surviving lawful issue of any his child or children deceased, in equal portions (if more than one), share and share alike; such issue of any his child or children deceased, to have, receive and take the same share and portion to which his, her or their parent would have been entitled if living. But if it shall happen that my said son Henry shall depart this life after the decease of my said wife, without leaving lawful issue him surviving, or in case of his death before the decease of my said wife, without leaving lawful issue surviving at the time of her decease, then that they, said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, in the former case upon and immediately after the death of my said son Henry, and in the latter case upon and immediately after the death of my said wife, convey, assign, transfer, make over, pay and deliver all such last mentioned one-seventh part of my residuary estate (less the deduction last aforesaid), and the proceeds thereof then remaining, and all property and rights of property in which the same or any part thereof shall then be invested, and all interest, income, dividend and profits thereof not previously paid and applied in pursuance of the provisions hereinbefore contained, to the wife of my said son Henry at the time of his decease, if such wife there shall be then surviving, and if there shall be no such wife surviving, then to my own right heirs and legal representatives then surviving, in the same manner, shares and proportions in which they would have inherited and been entitled to the same if I had survived my said wife and son Henry, had owned and held said last mentioned one-seventh part in my own name and right at the time of my decease, and had died intestate." * * * * * * * * *

"Eleventh. The better to enable the said Margaret Palmer, Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors and survivor of them, and their successors or successor, to carry into effect the devises, bequests and directions hereinbefore con-

tained, I do hereby give and grant to them, and such of them as shall at any time be authorized to execute the several trusts hereby created, or any or either of such trusts, full power and authority at any and all times during the continuance of such trusts respectively, in their discretion, to change the investments of the estate and property by them held in trust, or any part thereof, and for such purpose or otherwise to grant, bargain, sell, convey, mortgage, lease, transfer and make over, as they may deem advisable, all or any part or parts of the real estate or personal property which shall be by them so held in trust, and to make, sign, seal, execute, acknowledge and deliver all and every such deeds, conveyances, mortgages, leases, transfers, agreements and other instruments in writing as may be necessary or proper therefor."

*Alfred Roe* and *John J. Macklin*, for the appellants.

*Osborn E. Bright*, for the respondent.

DANIELS, J.:

At the conclusion of the trial, the learned judge presiding at the Special Term delivered the accompanying opinion, containing an exposition of the views adopted by him as the law of this case:

"VAN BRUNT, J. On the 1st day of February, 1858, John J. Palmer, of the city of New York, died, leaving a last will and testament, by which he devised all his estate, real and personal, to certain persons therein named, to hold the same during the life of his wife Margaret, and pay the income thereof to her; and upon the further trust that, immediately after the death of his said wife, the said trustees should divide the said estate into seven equal parts. The income of each of said parts he directed his said trustees to pay to one of his children during life; and upon the death of any child, leaving issue him surviving, he directed his said trustees to immediately convey, assign, transfer and make over to such issue the said one-seventh part. The said testator also provided, in and by said will, that, the better to enable the said trustees to carry into effect the directions hereinbefore mentioned, that the said trustees should have full power and authority, at any and all times during the continuance of the said trusts, respectively, in their discretion to change the

investments of the estate and property by them held in trust, or any part thereof, and for such purpose, or otherwise, to sell and convey all or any part or parts of said estate which should by them be held in trust.

"Margaret Palmer, the wife of the testator, and two of his children, Robert G. Palmer and James H. Palmer, died before the testator, without issue, and unmarried. No division into shares, of the estate of said testator, was ever made by said trustees as directed by said will. On the 16th day of November, 1872, Henry, one of the sons of the testator, died, leaving him surviving a widow and several minor children. That, upon the 1st of July, 1873, the said trustees offered for sale certain portions of the real estate of the testator, which was stricken down to plaintiff at the price of $15,997.75. That the plaintiff, at said sale, paid the auctioneer's fees, amounting to $225, and also the sum of $1,599.75, being ten per cent of the purchase-price, and signed a memorandum or contract of sale.

"This action is brought to recover the money so paid and to cancel the said contract of sale.

"In the case of *Furness* v. *Furness*, I held that under a will similar to the one now under consideration, the executors or trustees were bound to make partition of the estate as soon as the debts and legacies were paid.

"In this case it appears that the trustees have neglected to make such partition for the term of fifteen years after the time designated in said will. It evidently was the intent of the testator that each of the seven parts into which he directed his estate to be divided, should be held upon separate and distinct trusts, and that immediately upon the death of any one of his children leaving issue him or her surviving, the share of such child, so dying, should vest immediately in the issue of such child. The power of sale given in the will was given to the trustees for the purpose of enabling them to make the divisions directed by said will, and also after the said divisions, to change the investment of any separate share. In this case it would appear, that the said trustees having neglected to make the divisions required by said will, the share of said estate belonging to Henry Palmer, upon his death, vested immediately in his children, and that they became tenants in com-

mon with said trustees in the whole of said estate. If this view is correct, then the power of sale in the trustees which would enable them to convey the whole title, ceased upon the death of Henry Palmer. Many cases have been cited by the defendant, to show that the court will not allow a trust to fail through the neglect of a trustee; but these cases seem to have no application to the question now under discussion. The trust, by the terms of the will itself, has terminated as to the one-seventh part of the estate, and the *cestui que trusts* have become tenants in common with the said trustees in said estate. The court, upon a proper application being made to it, would undoubtedly partition the said estate into seven parts, and would transfer one of the seven parts to the children of Henry Palmer; but I am entirely unable to see how it would be possible for the said trustees, by any deed which they might give, to divest the vested interest of the children of Henry Palmer in said estate. The deed, therefore, offered by the said trustees did not convey to the plaintiff the clear title to the premises purchased by him, and he is entitled, therefore, to recover back, with interest, the money paid upon such sale.

" Judgment ordered accordingly."

He seems to have overlooked the fact that by the decease of two of the children of the testator during his lifetime, the shares of the survivors were increased from sevenths to fifths. The testator provided for the contingency of any of his children dying before himself, unmarried and without issue. In that event the interest in the estate otherwise designed for them was given to the survivors. Robert and James each died unmarried and without issue, during the lifetime of the testator. That reduced the shares to five; each of the testator's children surviving him being entitled to the proceeds of a fifth part of his estate, to be set off and assigned according to explicit directions for that purpose given by his will.

With that correction the views of the learned judge appear to have been well sustained by the facts established in the case : and his opinion is adopted by this court as a proper exposition of the law for the disposition of the controversy between these parties. For the reasons there stated, as herein modified, the judgment appealed from should be affirmed, with costs.

DAVIS, P. J., concurred.

Brady, J. :

The testator, after directing the payment of his debts and the expenses of his funeral, devised all the rest, residue and remainder of his estate, real and personal, effects, property and rights of property whatever and wheresoever, to the persons named, to have and to hold the same as joint tenants, and not as tenants in common, their successors and successor, heirs and assigns forever, upon trust, nevertheless, to take, hold and receive such residue during the life of his wife, and apply the rents, interest, income, dividends and profits, after certain payments and deductions, to her use during her natural life. And upon the further trusts, immediately after the death of his wife, to divide his estate into seven equal parts or shares, to hold each share, and to pay the income thereof to a child (one of his seven children), and, upon the death of such child, to convey such share to his or her issue, if living.

In declaring the trust in relation to such division, the testator directed his trustees that, in their ascertaining the amount of his said residuary estate for the purpose of such division into seven parts, they should include in such estate, and compute as part thereof, all and every, the sum and sums of money by him at any time advanced or paid to or for or on account of his seven children thereinafter named, each, any or either of them, and charged to or against them, his said children, respectively, in his own handwriting, in a book of accounts kept by him at his dwelling-house, and marked on the inside of the cover thereof, in his handwriting, " John J. Palmer, number three ; " but that no interest should be computed or charged upon any or either of said sums of money so paid or advanced ; and, further, that they, the survivors or survivor of them, their successors or successor, should thereupon take, receive, have, hold, use and dispose of the said seven parts or shares of his residuary estate, and each of such parts or shares severally and separately and the income thereof ; and he gave, devised and bequeathed the same and each of them severally and separately, and the income thereof, to, for and upon the trusts, uses and purposes, among others, namely, to take, receive and hold one-seventh part, to be ascertained in the manner mentioned, less the amount advanced and chargeable thereto, according to the book of accounts mentioned, and to collect, get in and receive the rents, interest, income, divi-

dends and profits, and apply them to the use of the child to whom the share was assigned, during his natural life, and immediately after his decease, leaving issue him surviving, to convey, assign, transfer, make over, pay and deliver all of the one-seventh part, less the deduction mentioned, of his residuary estate and the proceeds thereof remaining, to the then surviving child or children of the parent representing such share, and the then surviving lawful issue of any his child or children deceased, in equal portions, share and share alike. There are other provisions in the trusts, but they do not at all affect the question which is to be considered and passed upon in this case.

The trust for each of the children is the same. The will also contained the following clause; "Eleventh. The better to enable the said Margaret Palmer, Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors and survivor of them, and their successors or successor, to carry into effect the devises, bequests and directions hereinbefore contained, I do hereby give and grant to them, and such of them as shall at any time be authorized to execute the several trusts hereby created, or any or either of such trusts, full power and authority, at any and all times during the continuance of such trusts respectively, in their discretion, to change the investments of the estate and property by them held in trust, or any part thereof, and for such purpose or otherwise to grant, bargain, sell, convey, mortgage, lease, transfer and make over, as they may deem advisable, all or any parts or part of the real estate or personal property which shall be by them so held in trust, and to make, sign, seal, execute, acknowledge and deliver all and every such deeds, conveyances, mortgages, leases, transfers, agreements and other instruments in writing as may be necessary or proper therefor." The trusts in reference to the wife of the testator failed because he survived her, and Henry Palmer died before the division directed by the will, leaving lawful issue living.

The learned justice presiding at Special Term held that, the trustees having neglected to make the divisions required by the will, the share of the estate to be set apart for Henry Palmer's benefit upon his death vested immediately in his children, and that they became tenants in common with the trustees, in the whole estate.

If this view be correct, the trustees could make no contract of sale by virtue of any power given by the will without a proper proceeding to have the children mentioned unite with them.

Whether the conclusion thus expressed is right or wrong, is the question which this court is called upon to decide. It will be perceived that the estate vested in the trustees. The testator gave and devised his estate to them to have and to hold the same as joint tenants, their successors, heirs and assigns forever, and by the eleventh clause he gave them full power and authority, at any and all times during the continuance of the trusts respectively, in their discretion, to change the investments of the estate and property so held by them in trust, or any part thereof, and for such purpose or otherwise to grant, bargain, sell, convey, etc., as they might deem advisable, all or any parts of the real estate or personal property, and to make, seal, execute, acknowledge and deliver all such conveyances, deeds, etc., as might be necessary or proper therefor.

The validity of the trusts created is not questioned. The whole estate, legal and equitable, was, by the will and statute of uses and trusts, vested in the trustees, subject only to the execution of the trust. (1 R. S., 729, § 60; *Noyes* v. *Blakeman*, 2 Seld., 567.)

Henry Palmer was a life tenant only therefore, entitled to nothing but the income of the seventh part of the whole estate, which was to be set apart for his benefit, and of his share in the same proportion of the estate, prior to the division to be made, until made. He was from the time of the division to receive the income of one-seventh, provided no advances were made to and charged against him; the income of less than one-seventh if any deductions were to be made for advances affecting his right to the whole, and nothing if the advance exceeded one-seventh of the residuary estate. There can be no doubt that this was the intention of the testator.

There can be no doubt either that he considered it possible that nothing would be due to one or more of his children out of the contemplated seventh part, because he provided as follows: "Tenth. If it shall happen, that at the time of the division of my residuary estate into seven shares or parts, as above provided, the sum and sums of money by me advanced or paid to, for or on account of any one or more of my said children respectively, and charged to or

against him or them severally in said book of accounts above mentioned, shall exceed the one-seventh share or part of my said estate, to which such child or children respectively will then be severally entitled, then and in that case it is my will, and I do devise, order and direct, that the excess of money so advanced paid, and charged to either of my said children, over and beyond said one-seventh share or part of my said estate, shall not be required of or collected from the child or children respectively, to or against whom the same shall be so charged, but I do hereby give and bequeath such excess to such child or children respectively, and each of them."

Whether, therefore, any income would be payable to any of his children would depend upon the condition of the account as shown by the book to which he referred, and which was to be the controlling guide for the trustees; and whether it would become the duty of the trustees to pay any income to. Henry Palmer, or to convey any estate to his children after his death, would necessarily depend upon the result of an examination of that book, and the application of the rule in making the division which the testator prescribed.

Henry Palmer took no other than a life estate as suggested, subject to the trust, and, therefore, to such defeasance as the advances might create, in whole or in part; and his children took nothing more than the share, intact or diminished as the case might be, the income of which their parent was entitled to receive. The entire estate being in the trustees, subject only to the execution of the trust, the only interest which the children of Henry Palmer possessed was to the one-seventh, or share of their father, when ascertained (see *Bernard* v. *Montague*, 1 Merivale, 422; *Elwin* v. *Elwin*, 8 Ves., 547), and set apart, subject also to the trust which vested the estate in the trustees, and gave them the power to sell it, if in their judgment they should deem it advisable. The interest itself was not only subordinate to and controlled by the trust, but it was a contingent or limited one, dependent upon the advances made to their parent during the lifetime of the testator. They could enforce the performance of the trust (R. S., 729, § 60, *supra*), but nothing more, and in that way acquire whatever was their right under the provisions of the will, and their due application to the facts and circumstances disclosed, which limited or controlled them.

It follows from the views thus expressed, that the children of Henry Palmer acquired by his death no estate which was independent of the trust, and over which they could exercise independent control.

It was entirely subordinate to the trusts conferred by the will, which were to be exercised or terminated before they could interfere with the estate vested in the trustees, both by the will and the operation of the statute. It also follows that it was not necessary to consult them, or to unite them with the trustees in the contract of sale which they made to the plaintiff, the trustees having full power and authority, under the will, to make the transfer contemplated. The learned justice at Special Term based his decision entirely upon the converse of this proposition ; and his conclusions being erroneous the judgment rendered must be reversed, and a new trial granted, with costs to abide the event.

Judgment affirmed, with costs.